The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Thank you Madam Clerk and thank you to all who are present this morning for this week's arguments and particularly for this morning. We appreciate all counsel making themselves available through our virtual forum for these arguments. Madam Clerk, would you call the first case for the morning please? 20-1925 from the Southern District of Iowa, McGowen, Hurst, Clark & Smith v. Commerce Bank All right and as we begin I just would like to make an announcement for all those who are observing and those who will be participating this morning. We have five scheduled arguments for the morning. The Court will take a brief recess following the third argument. All right. Mr. Moran, please begin your argument. May it please the Court, Counsel Bill Moran on behalf of Commerce Bank. Pleasure to see you this morning. We are here on the appeal of a summary judgment order entered last April in the Southern District of Iowa relating to a bank loan that was provided to Robert McGowan and acknowledged by Mr. McGowan on behalf of his accounting firm. And for the sake of brevity I'll refer to the accounting firm as McGowan and Hurst. I think initially in reviewing the order a couple of things needed to be pointed out and these were raised and I want to put a finer point on them. They were raised in our briefing. Specifically there's a couple of errors that the trial court made in connection with the factual recitation upon which he ultimately based his determination for summary judgment. One factual error that was stated relates to a statement that the loan that was made to Mr. McGowan was illegal. Counsel, were these factual errors raised to the district court? The district court issues were obviously briefed and they were contained within the briefing that was submitted in support of summary judgment, Your Honor. Was there a post-judgmental motion or some effort made to bring to the court's attention the alleged errors that you were raising? Not to my knowledge, Your Honor. The characterization of this specific statement as the loan being illegal is clearly contrary to the information and evidence that was submitted to the court. If you look at the briefing submitted, there is no indication by the respondent that the loan was illegal in any way and that the attack, at least with regard to this particular case, is with regard to the pledge of the stock and not the loan itself. The way in which this issue was addressed by the respondent was essentially it was a slip of the pen by the court that the loan was illegal. What the court meant was that the pledge was illegal and, quite frankly, that's a critical issue in this case. Was that listed as an issue in your brief? Yes, Your Honor, and it was addressed by the respondent in terms of the concern that the loan being characterized as illegal was an issue. The other error that was set forth in the factual recitation, which is a very critical error as well, is the observation by the trial court that the bylaws of the accounting firm allowed or required all shareholders to sign off on the pledge. It is clear that the bylaws do not require that. It is clear that, and I believe that respondent does not assert that the bylaws require that all the shareholders sign off on the acknowledgement with respect to the pledge. This is a very critical factor because this goes directly to the question of authority. Because that was one of the linchpins upon which the court determined that authority was not vested in Mr. McGowan to sign the acknowledgement binding the firm to the loan. Specifically, the bylaws are silent on the issue of whether or not all of the shareholders must sign off or agree to a loan. In fact, the bylaws vest in the president, which Mr. McGowan was the president, they vest in the president the authority to sign off on contracts on behalf of the accounting firm. The lawyer who was representing Mr. McGowan in connection with this loan, Robert Douglas, specifically informed the bank that the other shareholders did not have to sign off on the acknowledgement. What's the legal effect of that? I have to state that I just don't find that very convincing, the fact that someone who takes upon themselves the authority to make a loan in their own name, and the fact that their attorney is willing to support them in that process and state that according to his attorney, what he's doing is right, just doesn't seem to add very much to the convincingness of your statement. I think the nuance there, your honor, is really the fact of apparent authority. By the way, Mr. Douglas also has represented the accounting firm in other matters over the years, and I'll get to this comfort letter. That doesn't help either because that doesn't show that that attorney was operating as an agent for the accounting firm. Not in connection with the loan, I agree. He was not. He was operating as a lawyer on behalf of Mr. McGowan. But the point that I am raising is that with regard to apparent authority, we have to look at what the authority is that is conveyed by the principal either by actions or by words. And in this case, if you look at the bylaws, there is no prohibition against Mr. McGowan signing that acknowledgement on behalf of the firm. And quite frankly, when that attorney reads the bylaws of the actual organization that is now trying to avoid its responsibility for that loan, he is divining from those bylaws that authority. Does it make any difference that there's an apparent conflict of interest present in that action? Well, if there is, that is not an issue that the Commerce Bank would have been aware of. Because if there is a conflict of interest, it would have been Mr. Douglas's to deal with. It's my understanding that when the acknowledgement was originally created, it called for approval by the members of the board. And somehow it was changed. Does the record show who changed it to just include Mr. McGowan's signature? Yes, it was Mr. Douglas who changed it. The lawyer? The lawyer. And it's in an email where he recounts to the parties, to Commerce Bank specifically, that his review of the bylaws revealed that the firm or the other shareholders of the firm were not required to sign off on the acknowledgement and that it would be appropriate for Mr. McGowan as the president to bind the firm to the acknowledgement by his solo signature. And under those circumstances, again, no one is suggesting that Mr. Douglas engaged in some kind of fraudulent conduct. No one is suggesting that he somehow misunderstood. But the litmus test here is whether or not there is some evidence that there was authority conveyed to Mr. McGowan to sign that acknowledgement. Well, it seems that there have been all sorts of red flags alerting the bank that they might not be dealing with the actual authorities of the corporation or the legal entity with which they are hoping to have as a guarantor. And then that raises the question, then, what due diligence should the bank have done? I guess is the question. And if that is truly the question, what is the due diligence that the bank has done? Was it unreasonable as a matter of law for the bank to rely on the president of the bank making a representation that he had authority to sign on behalf of the entire corporation? When he's getting a loan for himself. But is it unreasonable as a matter of law? I'm not going to opine on that. I'm just trying to engage with you in your argument. I understand. But my point is that really is the test here because this is a summary judgment order. And what the trial court has determined is that as a matter of law, it was unreasonable for Commerce Bank to rely on the specific representations of the president of the bank that he had authority to sign off on this acknowledgement. That it was unreasonable as a matter of law for Commerce Bank to rely on legal counsel for the president of the bank and this legal counsel having had represented the bank. He wasn't representing him as president of the bank. He was representing him as a debtor, a prospective debtor. Well, he was representing as the president of the bank because the acknowledgement is signed as the president of the bank. That's how the acknowledgement is signed. And the point is with regard again to this issue of authority, we must look at what was it that the lawyer relied upon in order to advise not only his client but Commerce Bank in order to affect the signing of the acknowledgement. And it's undisputed that the acknowledgement was a critical material element to this loan being given. That is absolutely undisputed. And from that perspective, when you analyze this and you analyze the court's order and we look again at this comfort letter that subsequently was written. And again, that was written after advice from Mr. Douglas to the bank. And the bank issued a comfort letter because it had bought out a judgment and then assigned it back to Mr. McGowan in order for him to pay that off. Clearly, the accounting firm is interested in Mr. McGowan's personal financial health and his personal financial condition. And that's why they bought that judgment out and sold it back to him to have him pay for it on the advice of Mr. Douglas. And out of the blue, we get this comfort letter because of the concern that is raised with regard to Mr. McGowan's ability to continue to pay on our loan. And so from an apparent authority, from an actual authority standpoint, your honors, I submit that there's a fact question that needs to be submitted to the jury and I'll reserve my time for rebuttal. Thank you. Thank you, Mr. Moran. Mr. Craig. Thank you, your honor. May it please the court. Opposing counsel. I represent McGowan Hearst Clark & Smith PC, an accounting firm located in West Des Moines, Iowa, which is organized as a professional corporation under Iowa Code Chapter 496C. Because we're dealing with both an individual named Mr. McGowan and an accounting firm called McGowan Hearst, I'm going to refer to my client today as the firm or the accounting firm. Now, in this case, Commerce Bank ceased to hold the accounting firm liable for failing to honor a pledge of stock that one of its shareholders, Robert McGowan, gave to the bank as collateral for a personal loan despite the fact that the pledge is plainly illegal under Iowa law and despite the fact that the other shareholders had no knowledge of and did not authorize the consent to the pledge. The district court correctly granted summary judgment in favor of the accounting firm declaring the pledge to be illegal and unenforceable under Iowa law and holding that the firm could not be liable for refusing to honor that pledge because Robert McGowan did not have actual or implied authority to bind the firm to the pledge. That judgment should be affirmed in its entirety. Despite Mr. Moran's argument, the facts in this case are entirely undisputed and just applying the law to those facts establishes that the accounting firm was entitled to judgment as a matter of law. Mr. Craig, I did have a question about one of those facts. When did the firm learn of the acknowledgement? The undisputed fact, your honor, is that the firm learned of the acknowledgement in 2019 when they received a demand letter from the bank's counsel and that actually is what initiated this whole lawsuit. At that point, the firm filed a declaratory judgment action to hold that acknowledgement and pledge unenforceable. I'll start quickly with the declaratory judgment claim and the grant of summary judgment. The district court correctly held that that pledge was unenforceable and illegal under Iowa law. Under Chapter 496C of the Iowa Code, a transfer of shares in a professional corporation and a transfer is defined to include a pledge is only valid if the recipient of that transfer is a licensed professional in the profession that the corporation is performing or is the professional corporation itself. Second, it is only authorized or valid if the other shareholders consent or approve in writing to the transfer. Neither of these requirements was satisfied here. Obviously, the bank is not a licensed CPA and it is entirely undisputed that the other shareholders and directors of the firm were not aware of the pledge, let alone consenting to it. Commerce Bank really hasn't attempted to argue in any way that the pledge is somehow legal. Instead, they've raised a standing argument because the firm is not a party to the pledge itself. The district court correctly rejected that argument. To satisfy standing, you just have to have a specific personal or legal interest in the litigation and be injuriously affected and both of those elements are here. The firm had obviously a personal and legal interest in the pledge because the pledge was a transfer of its shares. The firm clearly has an interest in who owns the shares, the transfers of its shares, and ensuring that those transfers comply with Iowa law. On the injury element, there is also an injury in fact. Commerce Bank is seeking over a million dollars in this lawsuit because the firm allegedly failed to honor the pledge of stock. In addition to the monetary injury, there is also a non-monetary statutory injury in that there has been a transfer of the firm's shares in violation of Iowa law. That leads to the concept of zone of interest. The Iowa Supreme Court has recognized that a party has standing to enforce a statutory provision where the party is within the zone of interest of that statute. 496C.11 is clearly intended to protect the firm or protect professional corporations from unauthorized transfers of its stock. The firm was in the zone of interest protected by that statute and has standing to enforce that provision. In fact, I can't think of a party more appropriate to enforce that provision than the professional corporation itself. The district court correctly entered summary judgment on the declaratory judgment claim holding that the pledge was unenforceable. I guess I want to address one point that opposing counsel made. In talking about the injury element of standing, the district court opinion did state that once the bank argued that it could enforce the loan against the firm, the firm had a personal and legal interest to prove the loan unenforceable. I think it's a pretty disingenuous argument for the bank to make. It's clear that the district court in that part of the opinion was referring to the pledge which was collateral for the loan. In seeking to enforce the pledge against the accounting firm, Commerce Bank is in fact seeking all amounts due and owing under the loan. In a very real way, the bank was indeed seeking to enforce the loan. Despite using that loan language, which might be imprecise language, the district court's reasoning was sound. Once the bank sought to hold the firm liable for refusing to honor the pledge, the firm had a personal and legal interest in proving that that pledge was unenforceable. I'm going to move on now to the Commerce Bank's counterclaims for breach of contract. The district court correctly entered summary judgment on the breach of contract counterclaim because the undisputed facts established that Mr. McGowan did not have actual or apparent authority to bind the firm to the acknowledgement of the pledge and Iowa law will not enforce an illegal contract. Starting with the authority argument first, it's black letter law that an essential element of a breach of contract claim is that the parties have capacity to contract. If Mr. McGowan did not have authority to bind the firm to the acknowledgement, then the breach of contract claim based on that acknowledgement necessarily fails. There are two kinds of authority under Iowa law. There's actual authority and apparent authority. Actual authority exists when the principal intentionally confers authority on the agent. There are two subsets of actual authority, express actual authority and implied actual authority. Express authority is where the principal gives specific instructions or directions to the agent. In the corporate world, that would typically be through a board resolution or a bylaw of the corporation giving specific authority to the agent. Here it's undisputed that there was no express actual authority. The directors and shareholders of the firm never gave past a resolution or specifically authorized McGowan to consent to the pledge. They didn't even know about the pledge. If you look at the bylaws, the bylaws provide that the firm is managed by a board of directors. The board of directors can authorize the agent or the president to enter into contracts. Again, the board of directors is the authority there. We don't have a resolution from the board authorizing this acknowledgement. We don't have a bylaw delegating that type of authority to the president, so there can be no express actual authority. That brings us to implied actual authority. Implied actual authority is the all authority necessary and proper to carry out the agent's express actual authority. Commerce Bank argues that because he was president, because he was a shareholder, that was sufficient to generate a question of fact whether he had implied authority. Counsel, where does the requirement of the acknowledgement come from? The requirement of the acknowledgement? Right. The bank required the acknowledgement as part of its negotiation of the loan. I think what the acknowledgement really is, it's the consent that is contemplated by the statute. The statute requires the consent of all shareholders of the firm. The problem here is the consent wasn't approved. The acknowledgement wasn't approved by all the shareholders of the firm, so it didn't comply with the statute. Indeed, the consent could not have complied with the statute here because Commerce Bank is not a lawful recipient of the firm's stock. Mr. Craig, would this be a different case if the acknowledgement had not been edited and the signatures of the other shareholders not removed and the board members or shareholders had actually signed the acknowledgement? Would this be a different case? Yes, I think it would, Your Honor, but though you would still have the issue that the bank is not a lawful recipient of the pledged shares under Iowa law because it's not a licensed professional, but certainly if the other shareholders and the board had approved the acknowledgement, this would be a different case on the authority side. But here, that didn't happen, and the fact that Mr. McGowan was president shareholder is not good enough to bind the firm. Mr. McGowan, to be clear, was only a 10% shareholder in the firm, so he was a minority shareholder. There's no law that I'm aware of that would allow a minority shareholder just to have independent authority to bind the corporation. And with respect to his position as president, Iowa law does recognize that a president is frequently the controlling officer of the corporation and has implied powers, but there are limits to that. The president's implied authority is limited to actions incidental to his corporate duties and within the ordinary course of business. Here, the acknowledgement was not incidental to his corporate duties. This was a personal loan to Mr. McGowan. It wasn't a loan to the firm, and Mr. McGowan was both the beneficiary of the loan and the person purporting to verify consent on behalf of the firm, which was obviously a clear conflict of interest and should have raised red flags to the bank. The acknowledgement was also not in the ordinary course of business. Agreeing to a shareholder's pledge of stock to a bank as collateral for a personal loan, which is not a legal transaction in Iowa, and agreeing that that pledge somehow supersedes all other corporate documents and actually prohibits the firm from modifying its shareholder agreement, I mean, that is clearly an extraordinary transaction, not something in the ordinary course of business. And it's similar to the types of transactions that the Iowa Supreme Court has said are outside of a president's implied authority. Things such as granting a lifetime employment contract, hiring an attorney to sue a corporate officer and majority shareholder, or selling all of the corporation's real estate when the agent was charged with managing that real estate. So, it's outside the ordinary course of business, so it's not within Mr. McGowan's implied authority to bind the firm. In addition, I go back to the statute. The statute specifically requires that the other shareholders consent to any pledge of shares. How can implied authority override that statutory requirement? It simply can't. And in addition, Iowa law says that the bank isn't a lawful recipient of this pledge of shares because it's not a professional corporation. How can the president of the firm have implied authority to enter into an illegal transfer of the firm's shares? The answer is it can't. So, there was no actual authority as a matter of law. So, that turns to the apparent authority argument. Commerce Bank has argued that there was apparent authority to bind the firm to the acknowledgement, but apparent authority is authority that's lacking but which the principal led the third party to believe the agent had. So, apparent authority under Iowa law focuses on the corporation's, the firm's communications to the third party. It's undisputed here. No one at the firm ever talked to anyone at the bank. The firm, the other shareholders and directors were completely unaware of any of this pledge or the loan. And it's undisputed that no one at the bank reached out to anyone at the firm. As the court mentioned earlier, the original draft of the acknowledgement had all the signature lines for all the shareholders. And at the request of the debtor himself, they removed all those. So, they could have protected themselves by reaching out to the bank and confirming whether this was in fact consented to by the firm. They simply failed to do that. Counsel, if this, assume with me that there was no statutory restriction on the pledge of the stock of this professional corporation. Is there a statute that requires the corporation, the professional corporation to acknowledge and essentially consent to the pledge of a single stockholder's stock? Yes, the statute 496C.11 does require the shareholders or a majority of the shareholders to approve any transfer of shares in writing. And that's the second subsection of that statute. Now, the bylaws themselves didn't have a specific provision relating to a shareholder approval of pledges. But the bylaws didn't need to have that because there's a statutory requirement that's essentially written into that, that that consent is required of the other shareholders. Well, that gets me back to why was the acknowledgement even required anyway? Because that section says, doesn't it require the consent of all of the outstanding shareholders? That it does, your honor. Is that what this, but this acknowledgement didn't purport to do that, did it? It could not, yeah, it did not purport to do that. What did it do? Was it even effective? Did they serve any purpose? You know, it was not effective. I mean, it didn't comply with the statute. The statute plainly requires all shareholder approval and it didn't meet that. So it's of no legal effect per the statute. It looks like I'm out of time. Thank you, your honors. Thank you, Mr. Craig. Mr. Moran, your rebuttal. You're muted. Thank you. Thank you, your honor. I just have a couple of points to follow up on. Nowhere in the briefing is it indicated that a pledge is the equivalent of a transfer as contemplated under 496C.11. And I have not found any case law or other support to conclude that a pledge of that stock is the equivalent of a transfer under 496C.11. And so that's the premise upon which the decision was based, was that this transfer was, or this pledge was the equivalent of a transfer and ergo 496C voided out the agreement. But the acknowledgement itself goes much more broadly than just a pledge of the stock. And I think it needs to be pointed out, and we've done this in our briefing, that at no time has Commerce Bank demanded a surrender of the stock. The stock was never provided to Commerce Bank, and no transfer ever occurred of that stock. And so in the absence of an actual transfer occurring, it's difficult to discern how that statute even comes into play. And there was no demand for the transfer of stock, so it's difficult to conclude how that particular statutory language comes into play. And this then goes back to the question of... Well, counsel, what was the demand letter that was sent to the bank that initiated this lawsuit? I'm sorry, the bank sent the demand letter to the accounting firm and demanded payment of the loan, and did not demand surrender of the stock. The stock had already been surrendered back by Mr. McGowan in 2018 to the accounting firm. He no longer had this. On what basis would the accounting firm be liable for a personal loan of a shareholder? On the basis of the acknowledgement. On the basis of the acknowledgement for which Mr. McGowan had authority to sign as president, and based upon the information that was provided to the bank. And I have to go back to that point, that in order to affirm this decision... So you're saying you were going to sue the bank as if the bank had made the loan? Had received the loan. And again, that goes back to this comfort letter that we were talking about. Obviously, the accounting firm had a vested interest in seeing Mr. McGowan's personal finances taken care of. And that's what they were doing here. And that's what he was doing here. And there are fact questions, replete fact questions, if you're talking about the question of due diligence, the question about whether or not it's reasonable to not rely on or rely on the representations of the president and the attorney. That's why this case has to be reversed and remanded for a jury trial. Thank you, Your Honors. Thank you, Mr. Moran. Thank you also, Mr. Craig. Court appreciates both counsel's argument to the court this morning. And we'll continue to review the briefing you submitted and render decision in due course. Thank you.